### AUGUSTUS H. EVANS *v.* BENJAMIN WILDER.

1. Ejectment. Plaintiff and defendant both claimed under one Price. Defendant gave in evidence three judgments of the supreme court, entered May, 1821, affirming the judgments in the court below, and giving judgment for costs—execution and sale by sheriff to one Riddick, for the use of the three judgment creditors. The certificate of sale and terms was made by the sheriff under the law of 1821, stating the purchase, &c., and that purchaser would be entitled to a deed in two years and a half from that date, unless Price, or some creditor of Price, redeemed. The land was redeemed in 1826 by C. & P., one of whom was a judgment creditor of Price, with the money of Price, and the deed was made to C. & P. to secure the payment of their debts. The land was sold by an agent of C. & P. but all the debts due them were not yet paid.

Plaintiff claimed under a purchaser, at a sheriff's sale, of the same land, made after all these transactions occured. Held:

1. Whether the act of '21 allowing the redemption of the property sold by the debtor within three years, &c. be constitutional or not, it would not invalidate defendant's title; for, if the act was unconstitutional, the sale to Riddick was absolute, and the substitution of C. &. P. by consent of Riddick, was clearly legal, and would show title out of plaintiff.

2. A sheriff's certificate, under the act of '21, commencing in the name of the sheriff, but signed by the deputy sheriff, is good—the signature of the sheriff not being essential, where it purports in the body of the instrument to be his act.

3. Where such certificate, by mistake, recited that the land could only be redeemed within two years and a half, instead of three years, as the law provided, such mistake, as it produces no injury to any one, and the law fixes the time of redemption, does not invalidate the instrument.

4. It was error in the court to instruct the jury, "that defendant had made out his case," there having been oral and written testimony, on which the jury had a right to act.

5. That Riddick conveyed to C. & P. as judgment creditors, when in point of fact, C. alone was such, is a matter of which no one can complain, and does not therefore invalidate defendant's title.

6. As Price redeemed with his own money, and saw proper to place the title in C. & P. to secure them, the legal title is in them, with a resulting trust to Price, after the satisfaction of their claims. This resulting trust was liable to execution, and whatever it may be worth, was sold by plaintiff's alienor.

7. The sale of the land by the sheriff in a lump, instead of parcelling it out, is not illegal. If it did injure any one, it should have been objected to at the proper time and by the proper person.

8. It is too late to object that there were no judgments on which the executions issued. This objection should have been made on the return of the executions, and they might have been quashed; but in fact there were judgments, at least, for costs.

*J. Spalding*, counsel for appellant:

1. First, the certificate of the sheriff's sale, under the act of 1821, cannot be made the foundation of any title. 1. Because it was not signed by the sheriff, J. C. Brown, but by J. K. Walker, in his own name. 2. Because it was not filed in the clerk's office within ten days after it was made, as the law required. 3. It was not in conformity with the law, as it gave a wrong time for redemption: 4. Because eight parcels of land were sold in a lump, and the sale was void.

2. The second point is, that if the sheriff's sale was not void, yet no right could vest in Comegys & Persehouse, because they were not judgment creditors. 2. Because it was Price who redeemed, and not Comegys & Persehouse, for it was done with Price's money.

3. As to the executions issued from the supreme court, there was no judgment to issue them on.

4. The fourth point is, that the deed by the sheriff to Comegys & Persehouse is void, because when it was made, the act of redemption of 1821 was repealed.

5. The fifth point is, that the instruction of the court

to the jury was too broad; it left nothing to the jury to pass on.

6. The sixth point is, that the law of 1821, respecting debtor and creditor as regarded executions then issued, was unconstitutional, and therefore nothing passed by the sale to Riddick, the sheriff's certificate to him, and the redemption of the land by Price for the use of Comegys & Persehouse.

*H. R. Gamble*, counsel for appellee:

1. The act of 1820, p. 74, sec. 21, authorizes this court to carry its own judgments into effect, by execution, in such manner as is proper; and the practice of this court, at this time, was to execute such judgments in manner here done.

2. The legal effect of the judgment in this court has been carried out by the execution in the form of execution adopted. Also, if there had been any variance in the manner alleged, the error might have been amended, and here the purchaser would be protected by the same principle—Laroche v. Washbrough & Mailand, 2 T. R. 735; Shaw v. Maxwell, 6 T. R. 450; Bissell v. Kepp, 5 John. R. 89; 8 John. R. 365; 13 John. R. 97; 549; Collier ads. Easton, 1 vol. Mo. Dec. 421; McNair v. Lane, 2 vol. 58.

3. If the redemption law was unconstitutional, then the sale, instead of passing a redeemable interest, passed the absolute title, and whatever evidence of such sale was given, would have the legal effect of conveying the whole title without any power to redeem in Price or a creditor—see 1 Litall's Rep. 16.

4. The repealing a law leaves all that constituted the VALIDITY of proceedings under the law repealed, unaffected. The validity of the proceeding consists in its having the same effect in law as it would have had under the law which was repealed.

5. Neither Price, nor any person claiming under him, can object to the correctness of the redemption which was effected by his means and for the benefit of his creditors, and without which the property was gone from him and his heirs forever.

McGIRK, Judge, delivered the opinion of the court.

Evans brought an action of ejectment against Wilder, the defendant, in the circuit court of St. Louis county.

JUNE TERM, 1838.

Evans v. Wilder. Ejectment. Pltf. and def. both claimed under one Price. Def. gave in evidence three judgments of the sup. ct. entered May, 1821, affirming the judgments of the court below, and giving judgment for costs—execution and sale by sheriff to one Riddick, for the use of the three judgment creditors. The certificate of sale and terms was made by the sheriff, under the law of 1821, stating the purchase, &c., and that purchaser would be entitled to a deed in two years and a half from that date, unless Price or some creditor of Price redeemed. The land was redeemed in 1826 by C. & P., one of whom was a judgment creditor of Price, with the money of Price, and the deed was made to C. & P. to secure the payment of the debts. The land was sold by an agent of C. & P., but all the debts due them were not yet paid. Pltf. claimed under a purchaser, at sheriff's sale, of the same land, made after all these transactions occurred. Held:

The defendant pleaded not guilty. Verdict and judgment for the defendant, Wilder. Evans appealed to this court.

It appears by the record that the lot lies in the city of St. Louis, and that both parties claim under one Risdon II. Price.

Evans gave in evidence a judgment recovered by him against Price, in the circuit court of St. Louis county, on the 4th of August, 1829. An execution issued thereon on the 24th of February, 1831, which was levied on the lot in question, and the same was sold by the sheriff on the 31st March to Evans, and on the 13th of April the sheriff made a deed to Evans. Evans then gave in evidence another execution on the same judgment shortly afterwards, and a levy and sale of the same lot to John F. Darby—a deed to Darby by the sheriff, and then a deed to Evans by Darby. It was also proved that at the time of bringing this action, Wilder was in possession of the lot in question.

Wilder then gave in evidence three judgments of this court against Price; one in favor of C. W. Hunter; one in favor of D. Coalter; the other in favor of the Bank of Missouri—all rendered 15th day of May, 1821. It appears, also, that the suits in which these judgments were rendered, were commenced in the circuit court, and judgments rendered therein, and the same were affirmed by this court.

The following is the form of the judgments in this court: "Whereupon, it is considered and adjudged by the court, that the judgment aforesaid, in form aforesaid rendered, be in all things affirmed, and stand in full force and virtue; and it is further considered that the said defendants in error recover their costs and charges by them laid out and expended, and that they thereof have execution." Executions issued on these judgments shortly afterwards, and these were levied on the lot in question. On the 28th of August, in the same year, it was sold to Thomas F. Riddick for the use of the Bank, David Coalter, and Curcier Ravesis & Co. of Philadelphia. The deputy sheriff, in the name of the principal, on the sale, executed a certificate to Riddick as aforesaid, under the act of 1821, for the relief of debtor and creditor, stating the purchase by Riddick, the consideration, and that he would be entitled to a deed in two years and a half from the date of the certificate, unless Price, or some other creditor of Price, should redeem within the time.

The defendant then gave in evidence a deed of the

sheriff of St. Louis county, to Cornelius Comegys and John Persehouse, for the lot in question, dated 26th of May, 1826, which recited the sale to Riddick, and the redemption of the property by Comegys & Persehouse, as judgment creditors of Price, and conveyed the property to them as such.

The defendant then proved that at the time the sheriff's sale was made to Riddick, and at the time the sheriff made his deed to them, Comegys was a judgment creditor of Price to the amount of $1,135 60.

The defendant then gave in evidence to show that John O'Fallon, as the agent of Comegys & Persehouse, paid the judgments against Price on which the property was sold, and that the same was paid with money furnished by Price, and that Comegys & Persehouse were to hold the property till 1st September, 1827, as security for the debt Price owed them, and that he, as agent, had afterwards sold the property to pay said debts, but that a large amount yet remained unpaid. It was not entirely clear, from the evidence, whether O'Fallon was lawful agent to do the business. This evidence the defendant gave to show title out of Evans at the time of bringing the action.

The plaintiff objected to the reception of all the defendant's evidence. The court overruled all the objections and permitted the evidence to go to the jury. The court then, on the application of the defendant, instructed the jury that the defendant had made out his defence and was entitled to a verdict, which instruction was excepted to.

The plaintiff makes many objections to the defendant's proceedings. He made a motion for a new trial, which was overruled. The first reason is, that the verdict is against law and evidence. 2. The court admitted illegal and improper evidence. 3. The court gave wrong instructions. To reverse the judgment the appellant, Evans, makes the following points by Mr. Spalding, his counsel:

1. First, the certificate of the sheriff's sale, under the act of 1821, cannot be made the foundation of any title. 1. Because it was not signed by the sheriff, J. C. Brown, but by J. K. Walker, in his own name. 2. Because it was not filed in the clerk's office in ten days after it was made, as the law required. 3. It was not in conformity with the law, as it gave a wrong time for redemption. 4. Because eight parcels of land were sold in the lump, and the sale was void.

JUNE TERM,
1838.

Evans v. Wilder.

2. The second point is, that if the sheriff's sale was not void, yet no right could vest in Comegys & Persehouse, because they were not judgment creditors. 2. Because it was Price who redeemed, and not Comegys & Persehouse, for it was done with Price's money. 3. It was not proved that the redemption money was paid to persons entitled to it.

3. The third point made is, that as to the executions issued from the supreme court, there were no judgments to issue them on.

4. The fourth point is, that the deed by the sheriff to Comegys & Persehouse is void, because when it was made, the act of redemption of 1821 was repealed.

5. The fifth point is, that the instruction of the court to the jury was too broad; it left nothing to the jury to pass on.

6. The sixth point is, that the law of 1821, respecting debtor and creditor, as regarded executions then issued, was unconstitutional, and therefore nothing passed by the sale to Riddick, the sheriff's certificate to him, and the redemption of the land by Price for the use of Comegys & Persehouse.

I do not deem it necessary to examine all the objections made to the title set up by the defendant. This title is offered to show title out of the plaintiff, and not to prove any title in the defendant.

1. Whether the act of '21, allowing the redemption of the property sold by the debtor, within three years, &c. be constitutional or not, it would not invalidate def.'s title; for, if the act was unconstitutional, the sale to Riddick was absolute, and the substitution of C. & P. by consent of Riddick, was clearly legal, and would show title out of Pltf.

With regard to the last question made by the plaintiff in error, I will say, that it seems to me to be perfectly immaterial whether the act of 1821, be constitutional or not; for if the act be unconstitutional, then the consequence must be that the sale of the property, by a lawful execution, was absolute to Riddick without redemption, and so the legal title would remain in him for the use of Coalter, Hunter, and the Bank of Missouri, unless he passed the title by his act to Comegys & Persehouse. While the sheriff's deed was not yet made to him, he permits the redemption to be made and consented that Comegys & Persehouse should be substituted for him as grantees under the sheriff's sale. That this substitution is allowable by law, see the case of Glasscock v. Bartlett, etal. 4 vol. Mo. R. 68. It seems to me, therefore, that the sheriff's deed being sufficient in form to pass the title under the circumstances to Comegys & Persehouse, the title is there, if the act of 1821 be unconstitutional.

I will now suppose the act to be constitutional, and proceed to examine the case on that ground.

JUNE TERM, 1838.

Evans v. Wilder.

The first point made by the counsel for Evans is, that the court erred in refusing a new trial. The reasons, as above stated, are: 1. That the verdict is against law and evidence. 2. That the court admitted illegal evidence. 3. That the court gave wrong instructions.

As to the first point, the allegation is too general to require a minute investigation. I will therefore pass to the second point, which is, that the court admitted illegal evidence.

A part of the evidence said to be illegal, is the sheriff's certificate of sale under the act of 1821. The act requires the sheriff to give a certificate to the purchasers of the fact of the sale, which certificate shall recite the sum for which the land was sold, and the time when the right of redemption will expire.

This certificate begins in the name of Joseph C. Brown, sheriff, and is not signed by him, but is signed by J. K. Walker, deputy sheriff. It is true, that all acts to be done by the sheriff, must purport to be done by him. This certificate does purport to be done in the name of the sheriff; there is, then, no defect in this particular. Is it then necessary to prove the act was his—that his name should be signed at the bottom of the paper? I think not, for by the record it appears that the principal made and signed the advertisement—that the sale of the property would be made on the day the certificate certifies it was made. It also appears by the same record that Walker acted as deputy sheriff in several instances. I therefore conclude that he was in truth the deputy sheriff of J. C. Brown, and that the objection is of no real value.

The next objection is, that the certificate says the property is redeemable in two years and a half, and that the law gives three years for redemption. I consider this a mere mistake and of no consequence. The date of the certificate shows when the sale was made. The law shows when the time of redemption expires more effectually than any certificate could do. In this matter no one could be misled or injured.

It is next alleged that the certificate was not recorded in ten days from its date. The act does require this to be done, but the certificate was recorded in two or three days thereafter, and before any possible injury was done to any one. There is, therefore, no force in this objection.

The third reason for a new trial is, that the court gave wrong instructions to the jury.

The court instructed the jury "that the defendant had

2. A sheriff's certificate, under the act of '21, commencing in the name of the sheriff, but signed by the deputy sheriff, is good; the signature of the sheriff not being essential, where it purports in the body of the instrument to be his act.

3. Where such certificate, by mistake, recited that the land could only be redeemed within two years and a half, instead of three years, as the law provided, such mistake, as it produces no injury to any one, and the law fixes the time of redemption, does not invalidate the instrument.

4. It was error in the court to in-

JUNE TERM,
1838.

Evans v. Wilder.

struct the jury, "that def. had made out his case," there having been oral and written testimony on which the jury had a right to act.

5. That Riddick conveyed to C. & P. as judgment creditors, when, in point of fact, C. alone was such, is a matter of which no one can complain; and does not, therefore, invalidate def.'s title.

6. As Price redeemed with his own money, and saw proper to place the title in C. & P. to secure them, the legal title is in them, with a resulting trust to Price, after the satisfaction of their claims. This resulting trust was liable to execution, and whatever it may be worth, was sold to pltf.'s alienor.

made out his defence." In this case there was both record and verbal testimony, and to decide that the defendant had made out his case, was taking the whole case from the jury. This view is sustained by this court in the case of Sibley v. Hood—3 Mo. R. 298; and 4 C. R. 71. On this point alone the judgment ought to be reversed. But to stop here, would not afford the parties much light regarding their course in future. I will, therefore, proceed to dispose of so many of the other points made, as I deem useful to the ultimate decision of the case. What has been said above, applies to the reasons for a new trial, and also to the first specifications of the first point made in argument.

I will now attend to the second point made in argument, the whole of which is, that first, Comegys & Persehouse were not judgment creditors, and that they did not redeem, but that Price did it with his own money; and third, there is no proof that the redemption money was ever in fact paid to Coalter and others.

As to the first branch of this point, I will say, that there was evidence to prove that one of these parties was a judgment creditor; the money was then paid for him; he then came within the description of the person who had a right to redeem, and the fact that he took a deed to himself, who had a right to redeem, and to another person who had no such right, could be no cause of complaint on the part of Evans, or any one else. If the other had no right to be admitted, then the whole title would, by the redemption, vest in the person having the right to redeem.

The second branch of the second point is, that Comegys & Persehouse did not redeem at all, but that the redemption was made by Price, with his money. The evidence in the cause shows the truth to be so. The counsel for the appellant insists that on this state of facts the law is, that the redemption put the title in Price. I will consider the law arising on this point. At the time Price made the redemption, Evans had no lien on the land, nor interest in the same, and whatever interest he has, arose several years after this redemption took place. When Price effected the redemption, he had a clear right and full power to place the title where he pleased; he then, for worthy motives, placed the title in Comegys & Persehouse, because he was indebted to them in large amounts, and they stipulated that if Price paid them, they would re-convey to him. In this respect the transaction partook of the character of a mortgage. But the

fact that Price purchased the redemption with his mo-
ney, and yet put the title in them by the sheriff's deed
to them as redeeming creditors, put the legal estate in
them, either as mortgagees or as trustees. If they are to
be considered as mortgagees in equity, then Evans' title
puts in him only the equity of redemption, and before he
can claim to have the land, he must exercise the equity
of redemption by redeeming, then he will be entitled to
the land. But I am more inclined to view Comegys &
Persehouse as trustees for Price, he having a resulting
trust. It is laid down by Sugden on Vendors, 2 vol. p.
152, that if a man purchase an estate and do not take
the conveyance in his own name, the clear result of all
the authorities is, that the trust of the legal estate, whe-
ther the conveyance be taken in the name of the pur-
chaser and others jointly, or in the name of others with-
out the name of the purchaser—whether in one name or
several, results to the man who advances the purchase
money; although the person in whose name the convey-
ance is made makes no declaration of trust, yet a trust
will result to the person who paid the money, by opera-
tion of law. This law, in my opinion, clearly fixes the
title in the land to be in Comegys & Persehouse. Fur-
thermore, they, as appears in evidence, have made a de-
claration of trust, and if that be not proved, yet the right
results to Price after the payment of the debts to Come-
gys & Persehouse; for I understand the law to be that,
until their debts be paid, the legal title being once in them,
neither law nor equity will compel them to part with
that legal title to Price, nor any one claiming under him,
till their whole debt and interest are paid.

My opinion on this point is, that if the fact should be
proved to be that Price did, when the sheriff's deed was
made to Comegys & Persehouse, owe them the money
recited in the deed, they have a lawful right to hold the
land till the money be paid. And my opinion further is,
that whatever interest Price had by way of resulting
trust in the lot, at the time the sheriff's deed was made
to Comegys & Persehouse, passed by the sheriff's sale to
Darby—afterwards made subject to the debts of Come-
gys & Persehouse. I am of opinion, if Price had any
resulting benefit in the lot at the time it was last sold to
Darby, under whom Evans claims, the same was subject
to the law of executions—Revised Code, 1825, 364, sec.
8, which declares that the real estate of the debtor, where-
of another was seized to the debtor's use, shall be liable
to execution.

JUNE TERM,
1838.

Evans v. Wilder.

7. The sale of the land by the sheriff in a lump, instead of parcelling it out, is not illegal. If it did injure any one, it should have been objected to at the proper time and by the proper person.

There is one point overlooked by me, which I will attend to, which is, that the sheriff sold the land in a lump. The law does not require the property to be parcelled, and it requires that not more should be sold than may be necessary—R. C. 1825, p. 367, sec. 13.

It is most apparent to me that nothing was lost to Price by selling those eight parcels of land in a lump; the whole only brought about $200; at any rate, not near enough to pay the executions. If they had been sold separately, they might have brought more, but it is not clear that they would have brought enough to pay the judgments. But Price was the man to complain of this, and that complaint should have been made on the return of the execution, or as soon thereafter as it could well be done. This not being done, I doubt if it can now be done.

The third inquiry on the second point is, that there was no evidence the money for redemption was paid to the right person. The evidence on this point seems to be defective.

8. It is too late to object that there were no judgments on which the executions issued. This objection should have been made on the return of the executions, and they might have been quashed; but in fact there were judgments, at least, for costs.

The third point in argument is, that the executions issued from this court without any judgments. The records show that there were in this court, three several judgments for costs at least. It seems to me, that these executions might well have been quashed on the return, on the application of Price, but that he would not be heard on this question after the money had been paid over by the sheriff, much less can he be heard after this length of time; nor do I see how it can be right after a lapse of many years, to hold the sale void in a collateral way. But I think the executions would, at no time, have been quashed as to the costs of this court.

This point is ruled for the appellee.

I will say but little on the fourth point made by counsel, which is, that when the sheriff's deed was made to Comegys & Persehouse, the redemption statute was repealed. My opinion on this matter is, that if, at any time, the act was repealed, so that things begun under it could not be completed, then the effect would be to leave the property in Riddick, at least in equity, for him to hold in trust for the benefit of his *cestui que trust.*

The fifth point made in argument has already been disposed of under the third reason for a new trial.

The question as to the unconstitutional character of the redemption act, has already been considered.

The judgment of the circuit court is reversed with costs, and remanded for further proceedings, the other judges concurring herein.