CHICAGO & A. BRIDGE CO. *v.* ANGLO-AMERICAN PACKING & PROVISION CO. *et al.*

(*Circuit Court, W. D. Missouri, St. Joseph Division.* June 18, 1891.)

**1. CREDITORS' BILL—WHEN MAINTAINABLE.**
A creditor of a corporation obtained a judgment *in personam* against it in a federal court of Kansas. On the return of execution unsatisfied in that state, he instituted attachment proceedings in a state court of Missouri against land there situated, the legal title to which was in the directors, and held by them in trust for the corporation. *Held* that, after securing a lien against this land by prosecuting the attachment to judgment, the creditor had the right to maintain a bill in equity in the state court to remove the obstruction of the legal title in the directors, and to subject the property to the payment of his debt, without first issuing an execution on the judgment, and having a return of *nulla bona;* and the removal of the cause into a federal court of Missouri, by the directors and the corporation, on the ground of their non-residence, does not deprive him of this right.

**2. SAME—BREACH OF TRUST.**
During the pendency of the original suit in the federal court of Kansas, a contract was entered into between the directors and stockholders of the corporation, by which the land in question was to be sold, and the proceeds first applied to the liquidation of the debts of the corporation. *Held,* that the failure of the directors to make the sale, and to so apply the proceeds, was a breach of their trust, and was sufficient to confer jurisdiction on a court of equity to reach the land as an equitable asset of the corporation, for the benefit of one of its creditors.

**3. SAME—SERVICE BY PUBLICATION.**
Since the object of the suit is to fix the trust on the land in the hands of the directors, and to subject it to liability for the creditor's debt, jurisdiction over the corporation, which is a non-resident, may be obtained by publication, under Rev. St. Mo. § 2022, which provides that in suits which have for their immediate object the enforcement or establishment of any lawful right, claim, or demand to or against any real property within the jurisdiction of the court, an order by publication may be made.

**4. FRAUDULENT CONVEYANCES—WHAT ARE.**
Rev. St. Mo. § 571, which gives an attaching creditor an action at law to set aside a "fraudulent" conveyance of property, does not apply where the legal title of land was in good faith taken for the use and benefit of the debtor, with a resulting trust in favor of its creditors.

**5. JUDGMENT AGAINST CORPORATION—EFFECT ON DIRECTORS.**
A judgment *in personam* against a corporation, obtained in a federal court of a sister state, is conclusive on the merits in the courts of every other state when made the basis of an action; and the directors and managers of the corporation are as conclusively bound by the judgment as the corporation itself.

This is a bill in equity. Its substantial averments are as follows: The complainant is a corporation under the laws of Kansas and Missouri, and the Anglo-American Packing & Provision Company is a business corporation of the state of Illinois, and the other respondents, Robert D., John, George, Anderson, William, and Alexander Fowler, are also citizens of,

and residents of, the state of Illinois. From January, 1878, to 1884 or 1885, the said Fowlers were in business as partners, under the firm name of "Fowler Bros.," engaged in butchering hogs and packing pork at the town of Winthrop, in Buchanan county, Mo. In 1878 they purchased the real estate in question, situated in said county, and caused the deed therefor to be made to the respondents Robert D. and Anderson Fowler. Said property was designed and used for the plant in conducting said packing business, and was bought, used, and treated as partnership property of said Fowler Bros. The said Fowlers were the sole incorporators and stockholders and managers of said packing company, organized as a corporation, as aforesaid; and said real estate, so held as partnership property, was put into said corporation as an asset thereof; the said corporation issuing stock to said Fowlers in amount and value equal to the value of all the partnership property, including said real estate, which was thereafter treated and regarded as a part of the assets of the corporation, although the legal title remained in said Robert D. and Anderson Fowler. From 1878 to 1884 or 1885, the said corporation respondent occupied and used said real estate, conducting thereon the business aforesaid, as formerly conducted by said Fowler Bros. In 1880 the respondent corporation contracted with the complainant the debt in question, for which the complainant brought suit in the circuit court of the United States for the district of Kansas, and on the 10th day of May, 1885, recovered judgment against the respondent corporation for the sum of $3,404.74, and costs amounting to $363.90. On this judgment execution was duly issued from said court, and was returned *nulla bona.* The bill avers that said respondent corporation neither at that time owned, nor has since owned, any property in said state of Kansas. It is also averred that in 1884, during the pendency of said suit in the United States court in Kansas, the said Fowlers entered into a contract with the respondent George Fowler, by which all the assets of the corporation, except the said real estate, was conveyed to said George Fowler. Among other things, said contract provided that—

"The packing-house property at Winthrop shall be sold, and, after first discharging all debts, liabilities, and outgoings affecting the same, the moneys arising from such sale shall be applied, first, in repaying to each partner the amount of capital invested in said concern, and interest thereon, and the ultimate surplus shall be divided equally among all the parties hereto; it being understood that any loss which may arise on the sale of the last-mentioned premises shall, in the final adjustment of the accounts, be borne by all the parties hereto in equal shares."

The bill avers that the property so alluded to was the real estate in question. In November, 1889, complainant instituted suit by attachment in the circuit court of Buchanan county, Mo., against the respondent corporation on said judgment, so recovered in the United States court in Kansas, and caused the real estate aforesaid to be seized under writ of attachment. Service was had in this action on the defendant therein on order of publication. There was no appearance therein by the defendant. Judgment by default was taken, which judgment was made

final May **31**, 1890.. Thereafter, and without issuing any execution on this judgment, the complainant filed the present bill in the said circuit court of Buchanan county, setting out the facts aforesaid, alleging that the respondent corporation and the other respondents are citizens, residents of the state of Illinois, and that the said corporation has no other property in the state of Missouri. The bill alleges that, while the legal title to the said real estate remains in the said Robert D. and Anderson Fowler, they hold the same in trust for the said corporation, with a resulting trust in favor of the complainant, as such creditor. The prayer of the bill is that said Fowlers be adjudged to so hold the said property in trust; that the court, by proper decree, subject said real estate to the payment of the judgment aforesaid, and order the sale of the said real estate for the satisfaction thereof; and for all proper relief. Service of this bill was had on order of publication. On the return-day the said Fowlers (Robert and Anderson) appeared, and on their application this cause was removed to this court, on the ground that applicants were non-residents of the state. In this court said Fowlers demur to the bill on the ground that it does not state facts sufficient to entitle the complainant to the relief sought, or to any relief whatever against respondents.

*Thomas & Dowe* and *B. P. Waggener*, for complainant.

*Lancaster, Pike & Hall*, for respondents.

PHILIPS, J., (*after stating the facts as above.*) It is to be kept in mind, in the consideration of this case, that the suit was instituted in the state court, and that jurisdiction in this court attaches by reason of the act of removal. It is also to be kept in mind that the plaintiff had first reduced this claim against the defendant corporation, Anglo-American Packing & Provision Company, to judgment in the United States circuit court of Kansas. That judgment was *in personam*, and, it being a court of record, every intendment is to be indulged in favor of the validity and conclusiveness of that judgment. According to the averment of the bill, the real estate in question is an asset of the debtor corporation. While the legal title thereto is in the Fowlers, in equity the property belongs to the corporation, and is held by them in trust for the payment of the corporation debts. As such it was subject to seizure under process of attachment for the complainant's debt. Section 4915, Rev. St. Mo.; *Evans* v. *Wilder*, 5 Mo. 313; *Rankin* v. *Harper*, 23 Mo. 585; *Herrington* v. *Herrington*, 27 Mo. 560; *Dunnica* v. *Coy*, 28 Mo. 525. The *situs* of the land drew to it the venue in the attachment proceeding in the Buchanan circuit court. The action could not have been instituted elsewhere. Sections 2010, 2011, Rev. St. Mo. The defendants therein being non-residents of the state, the statute (section 2022) expressly authorizes service by publication. After due proof of publication, judgment was taken therein by default.

It is true that it is a judgment *in rem* only, but it constituted a lien on the attached property, effectually binding it from the time of the levy of the writ of attachment, (*Lackey* v. *Seibert*, 23 Mo. 85,) and, when the plaintiff therein obtained its judgment, this lien became *res adjudicata.*

Having thus secured this lien by attachment prosecuted to judgment, the question arises, did the plaintiff therein have the right to resort to this bill in equity to remove the obstruction of the legal title in the Fowlers, and to subject the property to the payment of its debt, without first issuing an execution on the judgment, and having a return of *nulla bona?* Counsel for complainant invokes section 571, Rev. St. Mo., which declares that "any attaching creditor may maintain an action for the purpose of setting aside any fraudulent conveyance, assignment, charge, lien, or incumbrance of or upon any property attached in any action instituted by him." This statute clearly is not applicable to the facts of this case. It obtains solely as to fraudulent conveyances, etc., whereas the deed by which defendants obtained the legal title to the property in question was not fraudulently taken. By the averments of the bill they held it under conditions of implied trust, for the use and benefit of the debtor, with a resulting trust in favor of its creditors. The general rule of equity, as contended for by respondents, is that before the general creditor can resort to a court of equity to reach his debtor's property held under a fraudulent deed, and the like, he must reduce his claim to judgment, issue execution, and have a return of *nulla bona;* in other words, he must exhaust his legal remedies. The reason of this rule, requiring a judgment, etc., is that the claim must be rendered certain; otherwise, the proceeding to vacate the fraudulent transfer of the title, and to remove obstacles placed in the way of the successful operation of the execution, might be entirely fruitless if after all the debtor failed to obtain a judgment on his claim. But in this case the complainant had already obtained judgment *in personam* in the United States circuit court of a sister state. What was the effect of that judgment? "A judgment rendered by a court of competent authority, having jurisdiction of the parties and subject-matter, in one state, is conclusive on the merits in the courts of every other state when made the basis of an action, and in such action the merits cannot be inquired into. * * * Accordingly, the courts of one state, when called upon to recognize and enforce a judgment from another state, must admit, not only that there is a record, and that it is what it purports to be, but also that it is just, that the money awarded to the plaintiff is legally due, and that he has a right to recover it without a reinvestigation of his claim. * * * The true doctrine is that such a judgment is to receive in all courts the same faith, credit, and respect that is accorded to it at home." 2 Black, Judgm. §§ 857, 859; *Renaud* v. *Abbott*, 116 U. S. 277, 6 Sup. Ct. Rep. 1194. The respondents, being the principal stockholders in the corporation, and its managers, were as conclusively bound by that judgment as the corporation itself. *Hawkins* v. *Glenn*, 131 U. S. 319, 9 Sup. Ct. Rep. 739; 2 Black, Judgm. § 583. While such judgment, to be made available for process in another jurisdiction, would have to be sued over, yet, by the first judgment, the claim is rendered as certain as it ever can be. Its merits cannot be relitigated. The liability of the defendant corporation is fixed irreversibly. Hence, it is said by the chancellor in *Robert* v. *Hodges*, 16 N. J. Eq. 305:

"The objection to the interference of a court of equity, that the claim of the attaching creditor is not ascertained, if it be entitled to any consideration, can have no application in the present case, for the plaintiff's claims against the defendants have, in fact, been established by judgment. The fact that the judgment was recovered in another state does not impair the conclusiveness of the judgment as to the amount due. If the court where the judgment is recovered have jurisdiction of the person of the defendant, and of the subject-matter of the suit, its conclusiveness cannot be questioned in the forum of another state, where it is sought to be enforced. *Moulin* v. *Insurance Co.*, 24 N. J. Law, 222."

Where the reason of the rule ceases, the rule itself ought not longer to operate. In this case the claim was not only certain, but it had back of it a judgment conclusive and binding, and, under the law of the forum where the attachment suit was instituted, the complainant had secured and fixed his lien upon the real estate. Why should it then be compelled to proceed to execution, when all the purchaser could obtain by a sale thereunder would be a lawsuit, before he could get rid of the legal title of the respondents? He would acquire only the equitable interest of the debtor corporation in the land, after which he would be compelled to resort to a court of equity to divest the legal title. There is much practical sense in the distinction drawn by the supreme court of Maine in *Brisay* v. *Hogan*, 53 Me. 544:

"It is only when the debtor once had a title to the land, and has conveyed it away fraudulently, that a levy can be of any use. In such case, the conveyance being fraudulent, it is, as to the creditor, no conveyance, and he may treat the title as still remaining in the debtor. But when, as in this case, the debtor never had any title, treating the conveyance to his wife as either valid or void will not give him a title. It will be either in the wife, or in her grantor; it will not be in the debtor, and a levy on it as his property would be an idle and useless ceremony. No title could possibly be obtained by it."

In *Case* v. *Beauregard*, 101 U. S. 691, the equity rule in this respect is succinctly stated thus:

"It may be said that, whenever a creditor has a trust in his favor, or a lien upon property for the debt due him, he may go into equity without exhausting legal processes or remedies. *Tappan* v. *Evans*, 11 N. H. 311; *Holt* v. *Bancroft*, 30 Ala. 193. Indeed, in those cases in which it has been held that obtaining a judgment and issuing an execution is necessary before a court of equity can be asked to set aside fraudulent dispositions of a debtor's property, the reason given is that a general creditor has no lien; and, when such bills have been sustained without a judgment at law, it has been to enable the creditor to obtain a lien, either by judgment or execution. But when the bill asserts a lien or a trust, and shows that it can be made available only by the aid of a chancellor, it obviously makes a case for his interference."

In *Tappan* v. *Evans*, 11 N. H. 311, cited by Mr. Justice STRONG in support of the rule above quoted, the court say, (page 327:)

"The general principle deducible from the authorities applicable to this case is that, where property is subject to execution, and a creditor seeks to have a fraudulent conveyance or obstruction to the levy or sale removed, he may file a bill as soon as he has obtained a specific lien upon the property, whether the lien be obtained by attachment, judgment, or the issuing of an execution."

Again, on page 330, it is said:

"In relation to real estate fraudulently conveyed by the debtor, one mode of relief in equity is to remove the fraudulent title either before or after a levy, so as to perfect the title acquired under the proceedings at law."

This was followed in *Sheafe* v. *Sheafe*, 40 N. H. 518. See, also, *Stone* v. *Anderson*, 6 Fost. (N. H.) 516, in which the authorities are cited holding that, whenever the attaching creditor has obtained his lien, he "has a title to maintain a bill to set aside a fraudulent conveyance of the real estate." See, also, *Bank* v. *Harvey*, 16 Iowa, 146–148.

In *Conroy* v. *Woods*, 13 Cal. 633, it is said:

"In this case the plaintiff had, before the filing of his bill, a lien by attachment and a judgment. There was no necessity for the levy of an execution. It would have answered no beneficial purpose. It was not necessary to give a lien. That had already accrued from the levy of the attachment, and it was not necessary for a sale, for a sale was not desired. * * * The authorities do not place the right to go into equity upon the ground that the complainants must show themselves to be creditors by judgment, but they go on the ground that they must show a lien upon the property, and this lien exists as well by the levy of an attachment as by execution."

In New Jersey (*Robert* v. *Hodges*, 16 N. J. Eq. 305) it is held that an attaching creditor, even before judgment *in rem*, is entitled to go into equity to remove obstacles to the title of the land, "because the creditor has a valid subsisting lien."

In *Lackland* v. *Smith*, 5 Mo. App. 162, the court, after conceding that the judgment there was only *in rem*, and could not be *in personam*, because of the non-residence of the non-appearing defendant, say:

"It was a judgment, however, binding Smith's interest in the property described in the attachment, and within the jurisdiction of the court. It gave to plaintiff a right also to proper proceedings to subject the equitable interest of Smith in this real estate to the payment of the amount found to be due. Under this execution plaintiff declined to sell any interest of Smith's, declaring that he was unwilling by such a sale to sacrifice valuable property, and he very properly, on this state of facts, commenced proceedings in equity to enforce, without any unnecessary sacrifice of a valuable interest in real estate, the legal rights which he had in his action of law established against any interest Smith may have in the property attached."

The authorities touching the right of an attaching creditor after his lien on the property is fixed to go into equity are cited, *pro* and *con*, in 3 Pom. Eq. Jur. note, p. 465. Whatever may have been the earlier view of the supreme court of Missouri, it is apparent from its later utterances that, as its horizon extends, it gives a much broader and efficacious office to equity than first entertained. The highest office of equity is to serve the best interests of justice, and, while securing this end in enforcing the rights of the creditor, it will also have regard to the interest of the debtor.

In *Bobb* v. *Woodward*, 50 Mo. 95, the practice of the creditor, after obtaining his judgment, proceeding to execution and sale, was deservedly censured. The court say:

"There is little doubt that the interest of both debtors and creditors would be better subserved if in all these resulting trusts the creditor were required to ascertain, by judicial decision, the actual interest of the debtor in the property before offering it for sale. * * * If the property is sold before the doubt is solved, it necessarily follows that the purchase is subject to all the uncertainty of a gambling adventure. All our observation shows that such interests are bid off at a nominal sum, and, while the debtor is stripped, the creditor receives nothing."

Accordingly, in *Zoll* v. *Soper*, 75 Mo. 460, the court held that—

"So long as the right to the execution upon the judgment obtained continues, the creditor may go into equity to subject the land to the payment of his debt, for the reason that a sale under an execution in such case would be, in effect, but the sale of a lawsuit, and the land would be sacrificed, and no one could possibly be benefited materially but the purchaser, and he only in the event that he succeeded in setting aside the fraudulent deed. While the creditor might have the land sold on execution, equity will not compel him to pursue that ruinous course."

This is reaffirmed as late as in *Lionberger* v. *Baker*, 88 Mo. 455, 456. It certainly is to the interest of all parties here concerned that the rights and equities of the debtor corporation and of the Fowlers in the real estate in question should be ascertained and definitely settled before the sale. Such was clearly the right of the complainant in the state court, where it instituted this suit. Has it lost that right by the mere act of removal into this court at the behest of the respondents? The complainant could not have brought the attachment suit in this court, as the defendants are not residents of this district. Having obtained this lien by the attachment and judgment in the state court, the present suit is ancillary to that judgment,—a continuation, in effect, of that action, to work out the satisfaction of the judgment.

The bill in equity could not have been, in the first instance, brought in this court, as the federal court cannot be employed in an ancillary or auxiliary service of the state court. *Tarbell* v. *Griggs*, 3 Paige, 207; *Davis* v. *Bruns*, 23 Hun, 648; *Claflin* v. *McDermott*, 12 Fed. Rep. 375. When the cause was removed here by the respondents, the other party should not be deprived of the substantial rights secured to it in the forum where it was compelled by law to bring its action. This court takes the cause precisely in the condition which the law affixed to it in the state court at the time of the removal. We take the cause as we find it, beginning where the state court left it, "with full recognition of all substantial rights." *Sutro* v. *Simpson*, 14 Fed. Rep. 370; *Fidelity Trust Co.* v. *Gill Car Co.*, 25 Fed. Rep. 741; *Goldstein* v. *City of New Orleans*, 38 Fed. Rep. 628, 629; *Duncan* v. *Gegan*, 101 U. S. 810.

It would be a travesty upon justice that a defendant, by virtue of the removal act of congress, predicated alone upon the incident of the defendant being a non-resident of the state, could escape the liability which the law places upon him in the state court, where the complainant rightfully brought his action. The complainant, having a lien and judgment in the state court giving it the right in the same court to proceed by bill in equity as it did, presents a case distinguishable from that of *Scott* v.

*Neely*, 11 Sup. Ct. Rep. 712.   There the suit was brought in the federal court on a simple contract debt, and when there was no antecedent lien. Mr. Justice FIELD in that opinion recognizes the right here contended for, for he says:

"It is the existence, before the suit in equity is instituted, of a lien upon or interest in the property, created by contract, or by contribution to its value by labor or material, or by judicial proceedings had, which distinguishes causes for the enforcement of such lien or interest from the case at bar."

Superadded to all this, there is another ground upon which this bill possibly may be sustained.   Under the provisions of the contract of 1884, made during the pendency of the suit in the United States court in Kansas, the packing-house property, which is alleged to be the real estate in question, was to be sold, and the proceeds first applied to the liquidation of the debts of the corporation.   If that was a part of the consideration of the contract then made between the stockholders and directors of the corporation, it was not only an express recognition of the fact that this real estate was held in trust for the use and benefit of the corporation, but it was by all the parties in interest charged with the payment of this debt, among others.   To thereafter fail to so apply it was a breach of the trust by the holders of the legal title, and would seem to bring the case especially within the province of a court of equity, to reach an equitable asset of the debtor for the benefit of the creditor.   Be this as it may, the court ought to retain the bill, to see what the real facts are respecting said contract.

It is finally urged that the Anglo-American Packing & Provision Company being a necessary party to this suit, and it being a non-resident of the state, jurisdiction over it in this action cannot be obtained by order of publication.   The Code of Practice of the state directs that all attachment suits shall be brought in the county where the property attached may be found, and that suits for the possession of real property, "or whereby the title may be affected, shall be brought in the county within which such real estate, or some part thereof, is situated."   Sections 2010, 2011, Rev. St.   As the purpose of this action is to affect the title to real estate, it had to be instituted in Buchanan county.   As the object of this suit is to fix upon the real estate in the hands of the Fowlers the trust, and to subject it to liability for complainant's debt, it affects the title to real estate, and therefore the court of the *situs* of the property alone can give jurisdiction over the subject-matter.   The practice act would be lame indeed, if, after making the foregoing provisions, it had stopped short of prescribing some means of bringing the parties to be affected by the judgment before the court in such manner as to give the court jurisdiction over the *res*.   This the statute has undertaken to do by section 2022, which provides, *inter alia:*

"In suits in attachment, and in all actions at law or equity, which have for their immediate object the enforcement or establishment of any lawful right, claim, or demand to or against any real property within the jurisdiction of the court, an order of publication may be made," etc.

Within the purview of section 2022, this action has for its immediate object the enforcement or establishment of a lawful right, claim, or demand against the land in question. There is no intermediate claim, no ulterior object.

It follows that the demurrer is overruled.