NATIONAL FOUNDRY & PIPE WORKS, Limited, v. OCONTO WATER CO. et al.

(District Court, E. D. Wisconsin. July 17, 1895.)

1. JUDGMENTS—PRIVIES—STOCKHOLDERS IN CORPORATION.
  Persons who, at the time of the commencement of a suit against a corporation and the rendition of judgment therein, hold, as collateral security, stock in such corporation, which has been transferred to them on the books of the corporation, and who participate actively in the management of such corporation, are so far stockholders as to be privies to the judgment, and estopped to attack it in a collateral proceeding.

2. FEDERAL COURTS—FOLLOWING STATE DECISIONS—CHANGE OF RULING.
  When a federal court has made a decision respecting the rights of parties before it in particular property, based on the rulings of the highest court of a state as to the interpretation of a statute of such state, and the state court afterwards reverses its ruling, it is not the duty of the federal court to reverse its decision as to the rights of the parties in the same property in proceedings subsequently arising.

3. CORPORATIONS — RATIFICATION OF UNAUTHORIZED ACTS — RIGHTS OF THIRD PARTIES.
  An instrument claimed to be a mortgage was executed on September 13th by officers of a corporation, without authority of the board of directors and without the corporate seal. It was not delivered on that day, but on September 15th was placed with a bank which, on that or the next day, made an advance of money. On September 15th a mechanic's lien accrued on the property alleged to be covered by such mortgage. On October 29th the mortgage was ratified by the directors and stockholders of the cor-

poration, and a formal instrument executed under the corporate seal, antedated to September 13th. *Held*, that such mortgage could not operate to create a lien superior to the mechanic's lien accruing before the ratification.

**4. SAME—LIABILITY OF STOCKHOLDERS.**

A corporation was organized in July, 1890, and its stock subscribed but not paid for. In September the corporation agreed with A. and W. that its entire stock should be transferred to them as collateral security for moneys to be advanced. On October 2d certificates of stock were issued to the subscribers, and immediately transferred by them in blank to A. and W. Soon after, upon request of A. and W., these certificates were surrendered and new ones issued to A. and W. in their own names, for which they gave receipts to the original subscribers stating that such stock was held by them as collateral for moneys to be advanced. A. and W. also subsequently caused the stubs of their certificates to be indorsed with memoranda that the shares were held as collateral. In January, 1891, the original subscribers assigned all their interest in the stock and in the company to dummies nominated by A. and W., and were thereupon released from liability as indorsers on notes given to A. and W. for advances to the corporation, which was thereafter actually managed and controlled by A. and W. *Held*, that A. and W. became by these transactions the absolute owners of the stock, and liable for the amounts unpaid thereon to the extent necessary to discharge the indebtedness of the corporation.

Miller, Noyes, Miller & Wahl, for complainant.
W. H. Webster, for defendants.

JENKINS, Circuit Judge. I have given due consideration to the evidence and the able arguments submitted at the hearing. I deem it essential only to state as briefly as may be the conclusions to which I have arrived, without stopping to elaborate the reasons compelling thereto.

First. I cannot doubt that Andrews and Whitcomb are concluded by the mechanic's lien decree rendered October 3, 1892, against the Oconto Water Company, so far as the determination of the lien is concerned, if that decree ought now to be enforced,—a question subsequently considered. A judgment is conclusive against the parties and privies, unless impeached for fraud or want of jurisdiction. A stockholder of a corporation is so far a privy to a judgment against the corporation that he cannot attack the judgment in any collateral proceeding. Sanger v. Upton, 91 U. S. 56, 59; Graham v. Railroad Co., 118 U. S. 161, 177, 6 Sup. Ct. 1009; Hawkins v. Glenn, 131 U. S. 319, 329, 9 Sup. Ct. 739; Glenn v. Liggett, 135 U. S. 533, 542, 10 Sup. Ct. 867; Chicago & A. Bridge Co. v. Anglo-American Packing & Provision Co., 46 Fed. 584, 587; Bennett v. Glenn, 8 U. S. App. 419, 5 C. C. A. 353, 55 Fed. 956. Garland and Todd, who held $99,700 of the capital stock out of a total of $100,000 of capital, transferred their stock to Andrews and Whitcomb as collateral security. This stock was surrendered to the company and, at the request of Andrews and Whitcomb, new certificates for a like amount of stock were issued to them on the 18th day of October, 1890. Such stock has since stood and now stands in their names. The mechanic's lien suit was brought on the 30th day of January, 1891. At the commencement of and during the pendency of that suit, not only were Andrews and Whitcomb the holders of the stock standing in their

names on the books of the company, but they actually controlled the business of the corporation. As appears by the letter book of the company, offered in evidence, Mr. Andrews conducted the correspondence,—sometimes in his own name, sometimes in the name of the corporation. It is true they held this stock all this time as collateral security, but it is also true that they actually participated in, and in fact controlled, the policy and operations of the company at and after the commencement of the suit. The employment of counsel to defend that suit, if not actually authorized by them, could not, under the circumstances, have been unknown to them and unapproved by them. Counsel defending that suit was at the time, and since has been, the counsel of Andrews and Whitcomb. Holding the stock, although as collateral security, coupled with the active management of the affairs of the corporation, in my judgment, constitute them stockholders, so far as to conclude them by the judgment rendered against the company. They are not in a position to attack that judgment collaterally. The case of Hassall v. Wilcox, 130 U. S. 493, 9 Sup. Ct. 590, is not in conflict. That was a case of bondholders, not of stockholders. In such case no like privity exists upon which to rest the conclusiveness of the judgment.

Second. In National Foundry & Pipe Works v. Oconto Water Co., 52 Fed 43, affirmed, upon appeal, 7 C. C. A. 603, 59 Fed. 19; involving the mechanic's lien claim here asserted, this court held that under the law of Wisconsin a mechanic's lien existed for the materials furnished the Oconto Water Company in the construction of its plant. Since the affirmance of that decree by the circuit court of appeals, the supreme court of Wisconsin, in the case of Chapman Valve Manuf'g Co. v. Oconto Water Co., 60 N. W. 1004, with respect to the construction of the plant in question, has held that no mechanic's lien exists under the laws of Wisconsin for labor and supplies furnished a quasi public corporation furnishing water supply to the public. This decision reverses the former holdings of that court referred to in the opinion of this court reported in 52 Fed. 43, and in conformity to which holdings that decision was made, and changes the public policy of the state in respect to the application of the mechanic's lien law to a quasi public corporation. The question is therefore sharply presented whether this court should, in regard to this particular property, in respect to which it has determined that a lien exists, recede from its position in deference to the changed position of the supreme court of Wisconsin, and should follow its latest holdings. It is without question the duty of the federal court to avoid conflict with the well-settled decisions of the state courts, and they will lean towards an agreement of views if the question is balanced with doubt; but where, at the time of a decision by a federal court, there has been no settled construction by the supreme court of a state of a statute of that state, the duty is devolved upon the federal court to determine that question independently, and a federal court is not called upon in such a case to reverse its judgment in that case because the supreme court of the state has subsequently reached a different conclusion. It is much more the duty of a federal court to stand by its judgment when, as here, the decision of this court was

founded upon the construction placed by the supreme court of the state upon this very statute, applying it to public corporations by a series of decisions covering a period of nearly 30 years, declaring it to be the public policy of the state that the mechanic's lien law should extend to and include the property whether of public or private corporations, except property owned by a municipal subdivision of the state. Hill v. Railroad Co., 11 Wis. 215; Purtell v. Forge & Bolt Co., 74 Wis. 132, 42 N. W. 265. It cannot be doubted that these cases are in fact, although not in terms, overruled by the decisions referred to and by the principles asserted in Chicago, M. & St. P. Ry. Co. v. City of Milwaukee (Wis.) 62 N. W. 417, 419, 420. It is, of course, competent for the supreme court of the state to recede from its former rulings, and to establish a different policy for the state. It will doubtless be proper for this court, in any case hereafter arising, where rights have accrued subsequent to the last decision of the supreme court of the state upon the question, to give due consideration to the later rulings of that tribunal. But, with respect to the rights here involved, which had accrued before and had been determined by this court prior to these later decisions, I can only say in the language of the supreme court of the United States, that:

"It can hardly be contended that the federal court was to wait for the state courts to decide the merits of the controversy, and then simply register their decision, or that the judgment of the circuit court should be reversed merely because the state court has since adopted a different view. If we could see fair and reasonable ground to acquiesce in that view we should gladly do so, but in the exercise of that independent judgment which it is our duty to apply to the case, we are forced to a different conclusion." Burgess v. Seligman, 107 U. S. 20, 35, 2 Sup. Ct. 10.

I am therefore constrained to the conclusion that it is my duty in this case to adhere to my former decision, to the effect that the complainant and R. D. Wood & Co. were entitled to mechanics' liens upon this property.

Third. The instrument claimed to be a mortgage, under which Andrews and Whitcomb assert their right, is dated September 13, 1890, signed by Garland as president and Todd as secretary of the Oconto Water Company. Its execution was not authorized by the board of directors, nor was the instrument sealed with the seal of the company. It was not delivered on that day, but was placed with the bank on the 15th, on which or on the subsequent day an advance of money was made by the bank on a draft of Andrews and Whitcomb on Maine, which was paid by the latter some few days thereafter. The 15th of September was the date that the mechanic's lien accrued upon the property, as decreed in favor of the complainant and R. D. Wood & Co., although it appears from the stipulation filed that the first delivery of material to the Oconto Water Company was on the 8th of September. This instrument of mortgage, executed by Garland, was formally ratified at a meeting of the stockholders of the company on the 29th of October, 1890, and by the board of directors of the company on the same day, and at that time the formal contract or mortgage was executed by the officers of and under the seal of the company, but antedated to September 13th. Assuming this instrument to cover all the property of the company, it could not oper-

ate to create a superior lien as against creditors whose rights accrued prior to such ratification. It is said in Cook v. Tullis, 18 Wall. 332, 338:

"The general rule as to the effect of a ratification by one of the unauthorized act of another, respecting the property of the former, is well settled. The ratification operates upon the act ratified precisely as though authority to do the act had been previously given, except where the rights of third parties have intervened between the act and the ratification. The retroactive efficacy of the ratification is subject to this qualification: The intervening rights of third persons cannot be defeated by the ratification. In other words, it is essential that the party ratifying should be able, not merely to do the act ratified at the time the act was done, but also at the time the ratification was made."

See, also, Galloway v. Hamilton, 68 Wis. 651, 32 N. W. 636.

I therefore conclude that the liens of the complainant and of R. D. Wood & Co. are superior and paramount to any rights of Andrews and Whitcomb in the property, that their judgments are valid and effectual, and should be enforced.

Fourth. An interesting question to be determined is whether, under the circumstances disclosed by the evidence, Andrews and Whitcomb are liable to the creditors of the corporation as stockholders of the company. It is essential that the facts should be precisely stated, with a view to a correct application of the law to the case in hand. At the organization of the company in July, 1890, its entire capital stock was subscribed for as follows: By C. C. Garland, 990 shares; by F. H. Todd, 7 shares; by F. B. Barnes, J. W. McCabe and W. E. Krippene, 1 share each. Certificates of stock were issued to these parties, respectively, on the 1st and 2d days of October, 1890. It may be fairly said that none of this stock was actually paid for by parties subscribing, and that they were severally liable to the company and its creditors for the amount of their respective subscriptions. By the memorandum contract of the 13th day of September it was agreed by the company that the entire $100,000 of stock should be transferred to Andrews and Whitcomb as collateral security for the money to be advanced. On the 2d day of October, 1890, Garland sent to Andrews and Whitcomb the certificates issued to himself and to Todd, transferred in blank, and promised to remit the three certificates for one share each within a few days, unless Andrews and Whitcomb should prefer that they should be retained by Garland. On the 7th day of October Andrews and Whitcomb returned the certificates, requiring that the stock should be transferred to themselves upon the books of the company. On the 18th day of October, 1890, Garland surrendered those certificates, and the company issued certificates for 97 shares to Andrews and Whitcomb, and Garland forwarded the certificates to them. On the 22d day of October, 1890, Andrews and Whitcomb executed to Garland a receipt therefor, acknowledging the receipt from Garland individually of certificates representing 997 shares of the capital stock of the company, and stating that such stock was held as collateral to secure the payment of all moneys which may be advanced under contract, Exhibit A thereto attached, which contract was like the memorandum agreement of September 13th. On the 20th day of December, 1890, at the request of Andrews and

Whitcomb, the secretary of the company indorsed upon the appropriate stubs of the stock book memoranda that the shares of stock represented were owned by Garland, and issued to Andrews and Whitcomb merely as collateral.  On January 12, 1891, Andrews and Whitcomb being dissatisfied with Garland's management of the company declined to arrange for the advance of any further funds unless his connection was severed, and it was arranged that Garland should resign as president and as director of the company and assign all of his interest in the stock and all his interest of every kind in the company to one George W. Sturtevant, in consideration of which Andrews and Whitcomb released Garland from liability as indorser upon the notes given them by the Oconto Water Company to the amount of $40,000 for so much money loaned the company. At the same time Wheeler, Elkins, and Todd, who had on October 15, 1890, respectively, become the transferees of the shares of stock issued to Barnes, McCabe, and Krippene of one share each, assigned their respective shares of stock as follows:  Wheeler assigned to the defendant Whitcomb, Elkins assigned to S. W. Ford, and Todd assigned to the defendant Andrews.  Neither Sturtevant nor Ford paid any consideration for the stock.  They were mere dummies in the enterprise, acting in the interest of Andrews and Whitcomb, and the transfer was made to give the latter full control of the management of the corporation, which they thereafter exercised.  By this transaction Andrews and Whitcomb became the absolute owners of the stock.  The transfer to Sturtevant was not recorded upon the books of the company, although he appears by the minutes to have acted at the meetings as the holder of the 990 shares of stock, but in fact acted as the dummy and agent of Andrews and Whitcomb.

It has been repeatedly held that the transferee of stock who causes the transfer to be made to himself on the books of a corporation, although he holds it merely as collateral security for a debt of his transferer, is liable for unpaid balances thereon due to the company or to the creditors of the company.  Pullman v. Upton, 96 U. S. 328; Bank v. Case, 99 U. S. 631; Sleeper v. Goodwin, 67 Wis. 592, 31 N. W. 335.  But it is said here that the company itself pledged this stock to Andrews and Whitcomb for a debt by the company to them.  It is true that by the agreement dated September 13th, the company undertook to make immediate transfer in trust to Andrews and Whitcomb of its entire capital stock as collateral.  The true reading of that agreement, judged in the light of the subsequent conduct of the parties, is that the company agreed to procure the subscribers to transfer to Andrews and Whitcomb all the stock of the company. Andrews and Whitcomb took the stock, not from the company, but from the stock subscribers holding it.  They required for their protection against the creditors of the stockholders an absolute transfer of the stock on the stock book of the company, but they were careful afterwards to have it recognized that they held that stock merely as collateral, and that Garland and Todd owned the stock subject to the debt for which it was pledged.

If the case rested here, there might be reason to uphold the con-

tention that the authorities cited, holding liability of the pledgee of the stock, are distinguishable from the case in hand.   In those cases the pledgees received their stock directly from the stockholders, and as collateral to the debt due by the stockholders.   Here the stock was caused to be transferred by the company as collateral to a liability of the company, the stockholders acquiescing to enable the company to keep its obligation.   Creditors stand in the right of the corporation, and they can only enforce the obligation of the stockholder where the corporation could do so.   This I think is the extent to which the case of Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, has gone.   The whole discussion there was whether persons to whom a corporation pledges its stock as collateral were within the exemption of the statute of Missouri which provided that:

"No person holding stock in any such company as executor, administrator, guardian, or trustee, and no person holding such stock as collateral security, shall be personally subject to any liability as a stockholder of such company; but the person pledging such stock shall be considered as holding the same, and shall be liable as a stockholder accordingly, and the estate and funds in the hands of the executor, administrator, guardian, or trustee shall be liable, in like manner and to the same extent, as the testator or intestate, or the ward or person interested in such funds, would have been if he had been living and competent to act, and held the stock in his own name." 1 Wag. St. c. 37, art. 2, § 9.

The court held that the case was within the exemption of the statute, notwithstanding the supreme court of Missouri, after the decision of the case in the court below, had taken a contrary view. It will be observed that the statute there under consideration carefully provided that the liability to creditors should remain somewhere, and that the holder of the stock merely as collateral should not be held.   There the corporation pledged its unissued and unsubscribed stock; here the company caused to be pledged stock issued to subscribers.   There the corporation had no recourse to subscribers; here it had.   One of the reasons assigned for holding the transferee of stock liable is "that the creditors of the bankrupt company are entitled to the whole capital of the bankrupt as a fund for the payment of the debts due them.   This they cannot have if the transferee of the shares is not responsible for whatever remains unpaid upon his share, for by the transfer on the books of the corporation the former owner is discharged."   Pullman v. Upton, supra. Here Garland and the other original owners of the stock had simply consented to the transfer of their stock as collateral.   Under the Missouri statute they would be, in law, the owners of it, subject only to the equities of Andrews and Whitcomb, and would remain liable to the company for whatever was unpaid upon that stock, notwithstanding its transfer.   By the transaction of January 12, 1891, Garland and the others conveyed their equitable interest in that stock in fact to Andrews and Whitcomb, although nominally to Sturtevant and others.   The use of the names of Sturtevant and Todd was a mere makeshift, the whole purpose of the transaction being, in consideration of the release of Garland from his indorsement and of his resignation as president and director, to put absolutely in Andrews and Whitcomb the ownership of that stock.   The transfer

was impressed with a secret trust in favor of Andrews and Whitcomb. A stockholder cannot escape liability by the use of the name of a dummy. Aultman's Appeal, 98 Pa. St. 565; Roman v. Fry, 5 J. J. Marsh. 634. That such was the transaction is manifest from the fact that Andrews and Whitcomb thereafter took actual management and control of the corporation. I think, therefore, that by that transaction they became the absolute owners of the stock, and with it took upon themselves the liability which the law imposes upon such owners, even if, as is not the case, a statute like that of the state of Missouri obtained in the state of Wisconsin.

In Pullman v. Upton, supra, it was asserted that, by the transfer upon the books of the corporation "the former owner is discharged." If this be correct, in the absence of any statute like that of Missouri, Garland and his co-subscribers were discharged from liability to stockholders upon transfer of their stock to Andrews and Whitcomb, and unless the latter be liable the recourse of creditors would be gone,—a result which the law would not favor. But, when Garland and Todd subsequently dispossessed themselves of all interest in the stock and property of the company, nominally to Sturtevant but actually to Andrews and Whitcomb, the latter became the absolute owners of the stock standing in their names upon the books of the company, and with such absolute ownership assumed the liability to creditors which the law imposes upon such ownership, if they were not primarily liable as holders of the stock as collateral security. I conclude, therefore, that Andrews and Whitcomb are liable for all unpaid amounts upon the stock standing in their name, so far as may be necessary to discharge the indebtedness of the company.

Fifth. I am of opinion that the instruments executed by the company to Andrews and Whitcomb were made in good faith and for a valuable consideration,—that they were not withheld from record by their procurement, nor with their consent, nor in fraud of creditors. I need not enter into discussion of the vexed question of what passed to Andrews and Whitcomb under these instruments, because the conclusions heretofore suggested furnish the complainant and the intervening creditors an adequate remedy, and render any decision of that subject unnecessary and perhaps unprofitable. I shall assume for the purposes of the decree that the instrument conveying the franchise also conveyed the plant.

Sixth. The bonds issued are, in accordance with the previous ruling upon a motion for injunction, and in accordance with the decision of the supreme court of the state, held to be void, and they should be delivered up to be canceled.

Seventh. I need not decide the question whether Andrews and Whitcomb are entitled in equity to any priority over the lien of the complainant and R. D. Wood & Co. by reason of their subsequent advances for the completion of the plant. That question passes out of the case upon the holding of their personal responsibility, and under the decree that must necessarily be entered upon the conclusions which I have reached.