# WERTHEIMER-SWARTZ SHOE COMPANY et al. v. CLEVIE H. WYBLE et al., Appellants.

**In Banc, November 17, 1914.**

1. **APPEAL: No Bill of Exceptions: Record Proper: Sufficiency of Petition.** Although the bill of exceptions was filed too late, and accordingly only the record proper can be considered by the Supreme Court on appeal, still the sufficiency of the petition is a proper subject of inquiry.

2. **FRAUDULENT CONVEYANCE: Avoiding Deed from Third Person to Debtor's Wife: Execution Sale: Combination: Inadequate Price: Equity.** Plaintiffs' petition states, that R traded his stock of goods and his note for $2500, which he afterwards paid, for a hundred acres of land the title to which was taken in his wife; that the conveyance of the land was made in fraud of plaintiffs as creditors of R; that plaintiffs separately sued him in attachment and the writs were levied and the abstracts filed; that R made default and judgments were taken against him, under one of which execution was levied and the land sold for $3 to L as trustee for plaintiffs, the execution being returned unsatisfied: that afterward R and his wife without consideration conveyed the land to defendant W in fraud of creditors, so that W became trustee for the plaintiffs; and that W in turn gave a purported deed of trust to defendant bank without consideration and likewise in fraud of creditors. The prayer asks that the original conveyance to R's wife, the conveyance to W, and the deed of trust be held fraudulent and void, and asks also for general relief. The decree held the conveyances fraudulent and void as against the sheriff's execution deed to plaintiffs—a conveyance not mentioned in the petition. *Held*, that the inadequacy of the price paid at the execution sale, in connection with the combination which by interposition of the trustee brought it about, rendered the sale feigned and colorable, and amounted to a fraud against R, the debtor, and accordingly the judgment must be reversed and the cause remanded. [Only BROWN, WALKER, and WOODSON, JJ., concur in the opinion in this case: LAMM, C. J., and FARIS, J., concur in the result, while GRAVES and BOND, JJ., dissent.]

Appeal from Pike Circuit Court.—*Hon. David H. Eby, Judge.*

REVERSED AND REMANDED.

*Pearson & Pearson* and *J. H. Blair* for appellants.

(1) The petition does not state facts sufficient to constitute a cause of action. (a) It is not averred that Louis Landau, as trustee, ever paid the purchase price of $3 and received a deed from the sheriff as execution purchaser. A purchaser at execution sale acquires no title to the real estate until the deed has been executed by the proper officer. But when it is executed it relates back to the date of the sale, and vests title in the execution purchaser from that time as against the execution defendant, and his privies and against strangers purchasing with notice. Lumber Co. v. Franks, 156 Mo. 689; Boyd v. Ellis, 107 Mo. 395; Leach v. Koenig, 55 Mo. 451; Porter v. Mariner, 50 Mo. 364; Strain v. Murphy, 49 Mo. 337; Alexander v. Merry, 9 Mo. 513; Davis v. Green, 102 Mo. 181; Blodgett v. Perry, 97 Mo. 275. The petition should have set out the details of the alleged trust in Landau, how created and for what purpose, in order to show that he had the right, under the terms of the trust, to purchase the land. The bald declaration that he purchased as trustee is not sufficient. (c) The petition alleges that the deed from Thomas N. Sanderson's executors to Tillie P. Rettke was fraudulent and void. Assuming that to be true, then the title, certainly the legal title, to the land remains in the heirs of said Thomas N. Sanderson, or the beneficiaries under his will, and they should have been made parties defendant in this cause. And besides, if that deed is fraudulent and void no resulting trust could arise thereunder in favor of plaintiffs, as creditors of Gustavus Rettke, and their petition states no cause of action. (2) There is no equity in the bill. (a) The purchase price of 3 cents per acre for the land which sold a few months prior thereto for $40 per acre, is so grossly inadequate that a court of equity will not ratify or confirm the transaction. State v. Elliott, 114 Mo. App. 562; Davis v.

McCann, 143 Mo. 172; Durfee v. Morgan, 57 Mo. 374; Mitchell v. Jones, 59 Mo. 438. (b) The purchase price of 3 cents an acre is so shocking to the conscience, and so grossly inadequate, as to amount to proof *per se* of fraud in the sale. Walter v. Hermann, 99 Mo. 532; Knoop v. Kelsey, 121 Mo. 642; Phillips v. Stewart, 59 Mo. 491; Cobb v. Day, 106 Mo. 300; Railroad v. Brown, 43 Mo. 294; Briant v. Jackson, 99 Mo. 598. (c) Inadequacy of consideration, if it be of so gross a nature as to amount in itself to conclusive and decisive evidence of fraud, is a ground for cancelling a transaction. In such case the relief is granted, not on the ground of inadequacy of consideration, but on the ground of fraud as evidenced thereby. Nelson v. Betts, 21 Mo. App. 231; Kerr on Fraud and Mistake, 161 Pom. Eq., secs. 926, 927; Bisp. Prin. Eq. (5 Ed.), sec. 219. We have not been able to find in the books a case of inadequacy of price as gross and unconscionable as the case at bar. (d) The purchase of the land by Louis Landau, as trustee for his co-plaintiffs, in our opinion, could not have had in view but one purpose, and that the suppression of competition at the execution sale between said co-plaintiffs. At least it had that effect. In the absence of such trust or combination either of those plaintiffs would, in order to protect itself, have bid for the land more than the debt of the other. This is self-evident. Inadequacy of price when unreasonable, is evidence of a secret trust, and is prima-facie evidence that a conveyance is not bona-fide if it is accompanied with any trust. Kuykendall v. McDonald, 15 Mo. 293. It is now the uniform doctrine that any combination at public or private sale, having the effect of preventing competition in bidding, is against the policy of the law and void. Durfee v. Moran, 57 Mo. 374; Hook v. Turner, 22 Mo. 333; Parker v. Railroad, 44 Mo. 415; 17 Am. & Eng. Ency. Law, p. 980; Wooten v. Hinkle, 20 Mo. 290; Hook v. Turner, 22 Mo. 333; Stewart v. Nelson, 25 Mo. 309; Miltenberg

v. Morrison, 39 Mo. 72; Stewart v. Severance, 43 Mo. 322; Durfee v. Moran, 57 Mo. 374; Bailey v. Smock, 61 Mo. 213; Massey v. Young, 73 Mo. 260; Beedle v. Mead, 81 Mo. 297. (3) (a) The court erred in finding and decreeing that the conveyance executed by D. Taylor Sanderson and Robert B. Sanderson, executors of Thomas N. Sanderson, and D. Taylor Sanderson and wife in their own right, to Tillie P. Rettke was fraudulent and void. Creditors can complain only of the fraudulent conveyance of property which is subject to their debts. Burns v. Bangert, 92 Mo. 167. A deed cannot be set aside as fraudulent unless the grantor therein intended thereby to hinder, delay or defraud his own creditors. Parker v. Roberts, 116 Mo. 657. (b) The only right or interest that could have possibly accrued to the plaintiffs by reason of that conveyance was possibly a resulting trust in their favor, if Gustavus Rettke fraudulently applied his own means toward the payment of a part of the purchase price for the land. But the court decrees that deed to be void. That being the case there was no resulting trust, or any other right or interest thereunder accruing to the plaintiffs. The deed being null and void the title remained in the beneficiaries under Thomas N. Sanderson's will, as if the deed had never been made. A void deed is without legal force or effect, ineffectual to bind parties, or to convey or support a right. 29 Am. & Eng. Ency. Law, p. 1065. (c) This is not similar to a case where a person makes a fraudulent deed, and it is set aside. (4) The bill charges only, that the deeds from Thomas N. Sanderson's executors to Tillie P. Rettke, and Tillie P. Rettke to Clevie H. Wyble, and the deed of trust from Clevie H. Wyble and wife to William J. Buchanan, trustee for the Bank of Eolia, are fraudulent and void, and asks that they be so decreed and adjudged. (It does not ask that they be set aside, nor does the court set them aside in direct terms.) The court so decreed and adjudged,

and further, went so far as to decree and adjudge that other conveyances were fraudulent and void which are not covered by, or even mentioned in, the pleading, and concerning which no relief is asked by plaintiffs, and under which Tillie P. Rettke acquired title to the land in controversy. The decree or judgment so rendered by the court is not within the issues made by the pleadings. This is reversible error. Spindle v. Hyde, 247 Mo. 32; Schneider v. Patton, 175 Mo. 723. While under the prayer for relief a party may have any relief to which he may show himself entitled, such relief must be founded on and consistent with the allegations in the bill and not such as may be proved at the trial. Roden v. Helm, 192 Mo. 93; Ross v. Ross, 81 Mo. 84; Reed v. Bott, 100 Mo. 62; Irvin v. Chiles, 28 Mo. 576; Harris v. Railroad, 37 Mo. 310; Newham v. Kenton, 79 Mo. 382; McNair v. Biddle, 8 Mo. 257. A decree cannot be based on facts not set up in the pleadings. Rumsey v. Railroad, 144 Mo. 175; Paddock v. Lance, 94 Mo. 283; Muenks v. Bunch, 90 Mo. 500; Newham v. Kenton, 79 Mo. 382; Baldwin v. Whaley, 78 Mo. 186.

*Tapley & Fitzgerrell* for respondents.

The appellants did not raise the question in the lower court that the petition did not state facts sufficient to constitute a cause of action, either by demurrer or objection to any of the evidence being offered at the trial of the case or by a motion in arrest. When the question is not raised in the lower court, reasonable inference will be indulged in by this court in favor of the petition being sufficient and will be sustained if by fair intendment it impliedly states a cause of action. Miller v. Klein, 160 S. W. 562. In this petition everything is stated that is essential. The appellants did not file a Bill of Exceptions, and consequently none of the evidence is before this court and they stand

on the bare record in the case. We think that the case above cited is sufficient. As to the second point: The decree in this case is in accord with the pleadings. Every material fact that is set out in the petition is passed upon by the court. Every fact that is passed upon by the court is referred to in the petition. It has been decided time and time again where a decree is in accord with the pleadings that it is sufficient, and that is all that is necessary as far as the decree is concerned. As far back as the 68 Mo. the courts are found holding to this rule. Cox v. Estep, 68 Mo. 110, and on down to the present date. The petition in this cause alleges that Rettke owned the stock of goods; that the plaintiffs sold him goods for his store and brought suit with attachment in aid, obtained judgment and while the judgment lien existed Mrs. Rettke sold and transferred the real estate. The appellants are not in a position to object to the inadequacy of the consideration. They did not come into court and ask that the deed from Gustavus Charles Rettke to Louis Landau, trustee, be set aside and tender the purchase price paid by Louis Landau as trustee, to the sheriff; nor did they offer to pay the indebtedness existing between Gustavus Charles Rettke and the respondents in this case. If they desire to take advantage of the inadequacy of the consideration they should at least tender the purchase price and what Gustavus Charles Rettke owes the respondents herein. The respondents herein have lost their judgment liens by limitation and if the court should hold that the deed from Gustavus Charles Rettke, to Louis Landau, as trustee, is not good by reason of the inadequacy of the consideration, then the respondents have lost their judgment lien by limitation, and as far as their remedy is concerned, by reason of their judgment, is lost by these respondents. Ames v. Gilmore, 59 Mo. 539. This proposition is too old and too well settled to cite further authorities.

Appellants were not taken by surprise for the reason that they bought this land from Rettke at the time it was attached and judgment entered against it by the circuit court in favor of the respondents, and at the time that same was sold respondents held the title. This suit was brought under Sec. 416, R. S. 1899, now Sec. 2344, R. S. 1909. Every allegation as required by said section is set out in the petition. Mansur & Tebbetts Imp. Co. v. Jones, 143 Mo. 253. On August 18, 1907, the heirs of Thomas N. Sanderson, for the purpose of correcting title, made a quitclaim deed to Tillie Rettke. This was for the purpose of correcting the title in Tillie P. Rettke and if any title was thus passed it related back to the time when the title was passed to Tillie P. Rettke from the executors. When the executors executed the deed to Tillie P. Rettke, D. Taylor Sanderson owned an undivided one-half interest in said real estate and the estate of Thomas N. Sanderson owned the other undivided one-half interest in said real estate. The judgment being for the right party, the cause should be affirmed.

BROWN, C.—Suit begun in Pike County Circuit Court, August 26, 1909. The plaintiffs are Wertheimer-Swartz Shoe Company, and Landau Grocery Company, corporations, and Louis Landau their trustee. The defendants are Clevie H. Wyble, Bank of Eolia and William J. Buchanan. The object of the suit is to obtain a decree establishing the title to about one hundred acres of land in Pike county as against the defendants.

The petition states, in substance, that in October, 1906, D. Taylor Sanderson, and Robert B. Sanderson, as executors of the will of Thomas N. Sanderson, deceased, for the consideration of $4000, conveyed the land in question to Tillie P. Rettke, wife of one Gustavus Charles Rettke, by deed duly recorded. That the purchase money was paid by Gustavus Charles Rettke by the transfer to the grantors of a stock of goods owned

by him in a store which he was running in the town of Cyrene in said county, for $1500, and the execution of the joint note of himself and wife for $2500 which he afterwards paid; and that the conveyance of the lands to said Tillie "was a mere subterfuge made, contrived and designed by her and her said husband to cover up the means of her said husband, and was so made with the intent to hinder, delay and defraud the creditors of the said Gustavus, and especially the plaintiffs." That during the months of June to September, inclusive, 1906, the said Gustavus, while running and operating his said store in Cyrene became indebted to the Wertheimer-Swartz Shoe Company in the amount of $245, and to the Laudau Grocery Company in the amount of $222.30; that each of said plaintiff corporations brought suit against him by attachment on November 9, 1906, alleging as grounds for such attachment that he had fraudulently conveyed and assigned his property and effects so as to hinder and delay his creditors, that he had concealed, removed and disposed of his property and effects so as to hinder and delay his creditors and that the debt sued for was fraudulently contracted. Writs of summons and attachment were sued out on the same date in each case. The summons in each was duly served, and on the 11th day of November the sheriff levied upon and seized the land in question under the writ in the case of the Landau Grocery Company, and on the 12th day of November, 1906, levied upon and seized the same land in the Wertheimer-Swartz Shoe Company case; filing the abstracts of the attachment in both cases on the last named date. Both these abstracts recite the levy of the attchment upon the land to have been on the 12th. day of November. The petition further recites, with sufficient detail, that the defendant in each of those cases made default and that judgment was taken against them respectively for the amount of their respective claims and interest. That an execution was

issued on the Landau judgment April 2, 1907, under which the sheriff levied upon and seized all the right, title, interest and estate of the said Gustavus Charles Rettke in and to said real estate, and sold it at the June term, 1907, and that Louis Landau as trustee for the other plaintiffs herein became the purchaser for the price and sum of three dollars; and that thereupon the execution was returned by the sheriff unsatisfied, "and the said Louis Landau has ever since said sale and purchase by him held the title to said real estate in trust for the use, benefit and behoof of the other plaintiffs therein, to-wit: said Wertheimer-Swartz Shoe Company and Landau Grocery Company, and still holds the same." The petition proceeds as follows:

"That the said judgments were from and after said 12th day of November, 1906, and still are, liens upon said real estate; that on the 23d day of August, 1907, said Tillie P. Rettke and her said husband by deed of conveyance of that date purporting to convey said lands to said Clevie H. Wyble, which said deed was made without any consideration moving therefor, and was made with full notice to the parties thereto of the attachment of said lands, the lien thereon and the sale thereof as hereinbefore set forth; that such pretended sale was made and accepted in bad faith for the purpose of defrauding, hindering and delaying the creditors of said Gustavus Charles Rettke, and Clevie H. Wyble held said lands in trust for said creditors, and the said Clevie H. Wyble still so holds the same; that on the 30th day of August, 1907, said Clevie H. Wyble made a deed of conveyance of said lands purporting to be a deed of trust in the nature of a mortgage to said William J. Buchanan, as trustee for said Bank of Eolia, made for the pretended purpose of securing the payment of a promissory note for $2000 made as alleged by said grantor to said bank; that said deeds of trust and promissory note were made without any

consideration therefor, and with the full knowledge by all of the parties thereto of said attachment liens on said lands, the said sale and the purchase thereof, and made for the purpose of aiding said Gustavus Charles Rettke, Tillie P. Rettke, and Clevie H. Wyble, in hindering, delaying and defrauding said creditors.

"Plaintiffs further state that said Gustavus Charles Rettke was rendered insolvent by said alleged sale of said lands to his wife, that he had no other property at any of the times herein mentioned nor has he any now and plaintiffs have no remedy at law and no means of collecting their said debts except by proceedings as herein set forth.

"Wherefore plaintiffs pray that said conveyances of said lands to said Tillie P. Rettke, to the said Clevie H. Wyble, and the deed of trust to said William J. Buchanan, trustee for said Bank of Eolia, and each of them, be held fraudulent and void as against the creditors of said Gustavus Charles Rettke, and especially the plaintiffs, and for all such further relief as may be deemed meet and just, and for costs."

Wyble answered admitting the execution of the deed from Tillie P. Rettke to himself and denying all other allegations of the petition. The bank and Buchanan filed a joint answer admitting the execution of the deed of trust and denied each of the other allegations of the petition. It will be observed that there is no allegation in the petition of the execution of a deed by the sheriff. The respondents made the following statement in their brief:

"This suit was brought under section 416, Revised Statutes 1899. Every allegation as required by said section is set out in the petition."

The court recites in its decree that the Sanderson conveyances "were fraudulent as to the plaintiffs and were a part of the plans and scheme and were procured by the said Tillie P. Rettke with the knowledge of the other defendants, for the purpose of de-

frauding the plaintiffs herein; that the said convey-
ance of said lands to said Tillie P. Rettke was a mere
subterfuge, made, contrived and designed by her and
her husband, to cover up the means of her said hus-
band and was so made with the intent to hinder and
delay and defraud the creditors of the said Gustavus,
and especially the plaintiffs herein.'' Also that ''said
plaintiff, Louis Landau, as trustee for the other plain-
tiffs herein, became the purchaser of said real estate
for the price and sum of three dollars, and said exe-
cution was by said sheriff returned unsatisfied and the
said Louis Landau has ever since said sale and pur-
chase by him held the title to said real estate in trust
for the use, benefit and behoof of the other plaintiffs
herein, to-wit: Said Wertheimer-Swartz Shoe Com-
pany and Landau Grocery Company, and still so holds
the same.'' Also that the deeds from the Sandersons
to Mrs. Rettke ''were fraudulent as to the plaintiffs
and were a part of the plans and scheme and were
procured by the said Tillie P. Rettke, with the knowl-
edge of the other defendants for the purpose of de-
frauding the plaintiffs herein and were and are fraud-
ulent and void as against the deed made and executed
by W. F. Campbell as sheriff of Pike county, Missouri,
dated the 11th day of June, 1907, and conveying to
plaintiffs the right, title and interest of said Gustavus
Charles Rettke in and to the lands above described
and the plaintiffs have and recover of the defendants
their costs in this behalf expended and that they have
execution therefor.''

The decree also mentions quitclaim deeds of
twenty-three other persons, made and recorded before
the beginning of this suit, and not mentioned in any
pleading in the case, holding that they were made with-
out consideration for the purpose of correcting sup-
posed defects in the original executors' deed, and are
fraudulent and void as to the plaintiffs.

Under the ruling of this court in Craig v. Railroad, 248 Mo. 270, approved in Bridge Co. v. Corrigan, 251 Mo. 683, the bill of exceptions was filed too late, and the case is before us on the record proper only. This imposes the duty to inquire whether the petition is sufficient to support the decree rendered. The sufficiency of the petition as the statement of a cause of action is a proper subject of inquiry at every stage of the case. [R. S. 1909, sec. 180.]

**Appeal: No Bill of Exceptions: Sufficiency of Petition.**

From an examination of these pleadings it is not easy to obtain a clear idea of the nature and object of the suit. The controversy is about a tract of land alleged to have been sufficiently valuable to have been sold by its owners to one Rettke for $4000. The payment of this amount stripped Rettke, who owed nearly $500 to two of the plaintiffs, of everything he had, and he caused the land to be conveyed to his wife, so that to all appearances she became the capitalist and he the insolvent debtor. Each of the two creditors sued him by attachment, levied on the same land, obtained judgment, and one of them took out an execution under which he caused it to be sold by the sheriff. Instead of bidding independently, they jointly employed their co-plaintiff to bid for them both, and he became the purchaser for three dollars. The petition leaves them here. It does not disclose that a sheriff's deed was made.

**Fraudulent Conveyance: Avoiding Deed: Petition.**

Although it is evident that none of the plaintiffs have or can be entitled to any interest in the land otherwise than under the deed to Mrs. Rettke, the only prayer of the petition is that this deed be held fraudulent and void. It is true that there is, if we use a little construction to aid the language, a prayer

**Avoiding Deed from Third Person to Debtor's Wife.**

for general relief, under which the court might have held the deed to Mrs. Rettke valid, and as creating a valid trust in favor of such creditors of her husband as should, in equity, seek to enforce it. It created no trust in his own favor. Whenever one has come to this court to have such a trust declared he has met with discouragement; sometimes expressed in the most vigorous language consistent with judicial dignity and conservatism. We have told him that "he does not come into a court of equity with clean hands," that he has made his bed an unclean one—let him lie in it; that the maxim that he who comes into equity must come with clean hands "touches to the quick the dignity of a court of conscience itself;" that its application does not depend upon the averments of the pleadings, or the wish of counsel, but it may be invoked and applied *ex mero motu* by the court. [Creamer v. Bivert, 214 Mo. 473, and cases cited; Davidson v. Dockery, 179 Mo. 687.] All of which goes to show that when one attempts to hide the title to his property from his creditors under the mantle of another, equity will not, when the trick has served its purpose, search it out from its hiding place, and return it to him as on a silver platter, in the form of a judicial declaration of a trust in his favor. It will, rather, like a famous judge of old, take water and wash its hands in the presence of the multitude, in token of its innocence of the terrible thing about to happen.

The fact that in such a case as this, whatever may be the nature of the rights and remedies of creditors, and they are undoubtedly ample, the debtor has no title, either legal or equitable, of which the law can take notice, has induced some courts to doubt whether there is anything vendible on execution under statutes like ours, which only cover "real estate whereof the defendant or any person for his use, was seized, in law or equity, at the time of the issue and levy of the at-

*Execution Sale.*

tachment, or rendition of the judgment, order or decree whereon execution was issued, or at any time thereafter." Where the debtor, having the title, has made a fraudulent conveyance, the statute leaves no question of this kind, but pronounces his conveyance, so far as his creditors are concerned, "clearly and utterly void."

The Supreme Judicial Court of Maine, in distinguishing a case like the present, Des Brisay v. Hogan, 53 Me. 554, said: "It was decided in Corey v. Greene, 51 Me. 114, that where the debtor never had any title to the land, a levy is unnecessary. It is true that, in that case, the title was held by a stranger, while in this it is held by the debtor's wife. But this makes no difference. It is only when the debtor once had a title to the land and has conveyed it away fraudulently, that a levy can be of any use. In such case, the conveyance being fraudulent, it is as to the creditor no conveyance, and he may treat the title as still remaining in the debtor. But when, as in this case, the debtor never had any title, treating the conveyance to his wife as either valid or void will not give him a title—it will be either in the wife or her grantor—it will not be in the debtor—and a levy upon it as his property would be an idle and useless ceremony. No title could possibly be obtained by it."

In Chicago & A. Bridge Company v. Packing Company, 46 Fed. 584, 588, a similar case which arose under the Missouri statute, the court said that there is much practical sense in this distinction. Justice, however, does not require that we should follow it in this case. We can rather profit by the example Dickens has given us in Mr. Jaggers. The scented soap with which he washed his hands of the sins of his clients left an odor more pungent, and characteristic, and telltale, than the sin itself. So when a court of equity has found that a litigant has, by an attempted fraud upon his creditors, either actual or constructive, placed him-

self outside the pale of its assistance, it should take care that the virtuous resentment in which it washes its hands of all participation in his fraud does not leave an odor in its nostrils so pungent and insidious that in its indignation it will offer its process to those who desire to pursue the culprit for purposes of plunder. We obtain an interesting view of this case from ·that standpoint.

The plaintiffs claim to have three dollars worth of equity in the four thousand dollars worth of land. It will not be claimed for a moment that the Rettkes, or any of the defendants, ever received any benefit whatever from this three dollars; in short, the court, in vindication of its own common sense and common knowledge, will presume that it was not sufficient to pay the cost of advertising and other costs incident to the sale. Instead of this sum having been applied to any extent toward the satisfaction of the judgments, it was used by the plaintiffs in payment of the cost of putting themselves in the commanding position from which they are carrying on this suit, leaving their judgment still intact for future use.

It was quite unnecessary that the plaintiffs should have expended these three dollars. The statute under which they attached the land gave them a remedy as broad and effective as that afforded by the statutory provisions relating to fraudulent conveyances and sales upon execution combined; and it certainly limited its remedy to a time preceding the execution and delivery of the sheriff's deed in which the attachment proceeding, if successful, must culminate; for it is given to the creditor and not to the execution purchaser. [R. S. 1909, sec. 2344.] The statement of plaintiffs in their brief that the case was brought upon the section just cited, together with the fact that the petition fails to allege the execution of a sheriff's deed, and does state that the defendant Wyble still holds the

261Mo44

land in trust for Rettke's creditors, might justify the disposition of this appeal upon that ground alone; but the attachment creditors have made the execution purchaser a party plaintiff; and the trial court in its decree having assumed the execution of a sheriff's deed to the plaintiff Landau notwithstanding the silence of the petition on that point, and having attempted with more or less clearness and success to grant relief upon that theory, we think it proper to briefly consider his rights from that standpoint.

There is no subject upon which the courts and textbooks have been more circumspect in the use of

**Inadequacy of Price.**

language than in treating of the effect of inadequacy of price upon execution and judicial sales. Mr. Rorer states the doctrine thus: "If there be no fact or circumstance relied on to set a sale aside but inadequacy of price, then the inadequacy must be such as in itself to raise the presumption of fraud, or else the sale will not be disturbed." [Rorer on Jud. Sales (2 Ed.), sec. 549.] In section 1095 of the same excellent work he repeats the idea as follows: "But although inadequacy of price will not alone be cause to set a sale aside, unless so gross as to raise a presumption of other cause, yet when inadequacy is combined with accident or appearance of fraud or unfairness, the sale will be set aside." In Mangold v. Bacon, 237 Mo. 496, 523, the court in correcting the language used by the majority in the same case upon a former appeal (229 Mo. 459), with a trifle more frankness said: "The majority opinion closed and locked a door heretofore open for use to reach relief in extreme and aggravated cases. That door should be left open—not only so, but *used* in this case on the facts here before us, even if no other ground of relief appears. In so far as the majority opinion is in conflict herewith, it should not be followed." We also said in Guinan v. Donnell, 201 Mo. 173, 202: "It has always been held by this court that

inadequacy of price alone will not justify the setting aside of a sheriff's sale of real estate under execution, unless the price is so inadequate as to shock the moral sense and outrage the conscience. Then courts will interfere to promote the ends of justice. [Railroad v. Brown, 43 Mo. 294; Holden v. Vaughan, 64 Mo. 588; Knoop v. Kelsey, 121 Mo. 642; Davis v. McCann, 143 Mo. 172.]'' These guarded expressions evidently mean that the courts do not desire to foreclose themselves from holding, if a proper case shall arise, that inadequacy of consideration alone may be such as to raise a presumption of fraud for which a sale will be set aside in equity, and that such inadequacy is always evidence to be considered in combination with other circumstances of fraud or unfairness in determining whether or not the sale should be set aside.

Applying these principles to the case stated in this petition we find no difficulty in dealing with the alleged equities of the plaintiffs. The inadequacy of price under the circumstances alleged is such as to render the sale a feigned and colorable one, a form through which whatever title or interest could be conveyed through the execution sale might be taken by these creditors without any rebate from their respective judgments or other consideration. This alone casts discredit upon the transaction, for the law contemplates that the single purpose for which land may be sold out at execution sales of this character is to raise money for application upon the judgment debt. The laws for this purpose are not open to the discreditable interpretation that they were devised to give creditors the opportunity to speculate upon either the misfortunes or sins of their debtors. Added to these considerations is the fact that the petition shows upon its face that the inadequacy of price was produced by a wrongful combination between the attachment creditors which amounted to a fraud against the debtor.

**Wrongful Combination at Sale.**

The condition of the title practically placed the sale in the hands of two bidders, namely, the two judgment creditors. Each of these was able to bid the amount of his judgment and would probably do so; for they alleged that outside what was invested in this land the debtor was insolvent so that nothing more could be hoped for from his property, although the judgment could be held over him in the hope of realizing something from his future acquisitions. Had these men bid independently, as they were able to bid by reason of the means controlled by them for the payment of the price, it would have been highly improbable, in short we may reasonably say impossible, that the land would have been sold without some credit upon these judgments. It was the combination between them by the intervention of a trustee and that alone which enabled them to secure the land without any abatement of the debts.

We do not say that it is not competent for creditors under some circumstances to combine to bid upon the property of a debtor. We only say that any such combination is unlawful which leaves out of consideration the right of the debtor to a fair disposition of his property and substitutes its appropriation by the combination without any consideration whatever. In Durfee v. Moran, 57 Mo. 374, 379, in considering the same question we said: ''That the price was grossly inadequate there can be no doubt, and although it is true that inadequacy of consideration is not of itself a distinct or independent principle of relief in equity, still, where the transaction discloses a state of affairs that shocks the moral sense or outrages the conscience, courts will interfere on slight circumstances to promote the ends of justice and defeat the schemes of fraud. [Han. & St. Joe R. R. Co. v. Brown, 43 Mo. 294.] Where property is palpably sacrificed, and a valuable estate is acquired for a mere pittance, all the attending circumstances will be closely scrutinized.

[Parker v. Railroad, 44 Mo. 415.] It is now the uniform doctrine that any combination at public or private sale, having the effect of preventing competition in bidding, is against the policy of the law and void. In the case of Wooton v. Hinkle, 20 Mo. 290, a sale was set aside, because there was an agreement among several persons, that one of the number should bid off the land, and the others should refrain from bidding, and then it should be divided between them. [See also Hook v. Turner, 22 Mo. 333.]''

It does not help the plaintiffs to say that the transaction out of which they are trying to develop their remedy is a fraudulent one, and that **Unclean Hands in Equity.** therefore the defendants must be content to be meat for any beast of prey that chooses to make a meal off them. One cannot read the petition and decree without the impression that it was intended to be framed upon the theory of constructive notice of the attachments by the filing of the abstracts, and that these attachments of this land were notice of the claim that the title of Mrs. Rettke was affected by the fraud charged generally in the affidavit. The fact that the defendants overlooked or misapprehended these things would not outlaw them. In fact, were they in the penitentiary for crimes growing out of the same fraud, the circumstance would not justify this court in abating its watchfulness to make sure that any litigant seeking the aid of its equity powers to extinguish their interests came with clean hands and a worthy cause. We are of the opinion that could we consider this petition as a bill to remove the cloud of the Wyble claim from a title acquired by plaintiffs through the execution sale, it contains no equity, and the decree necessarily entered upon that theory is therefore erroneous. We do not think that, should it turn out that a deed was executed by the sheriff in pursuance of his sale to Landau, the circumstance, under the facts of this case, would stand

in the way of a proceeding of the nature contemplated by section 2344, Revised Statutes 1909, to charge the judgment debts described in the petition against the land in question.

The judgment of the circuit court is reversed, and the cause remanded for further proceedings in accordance with this opinion, with leave to the parties to amend their respective pleadings in accordance with the rules of law applicable in such cases should they be so advised.

PER CURIAM.—This cause coming into Banc on a dissent is reheard there; with the result that *Woodson*, *Brown* and *Walker, JJ.*, concur in the divisional opinion of Brown, C.; *Faris, J.*, and *Lamm, C. J.*, concur in result only; *Graves* and *Bond, JJ.*, dissent.